# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES WILLIAMSON,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA UNIVERSITY OF<br>PENNSYLVANIA, *et al.*,<br><br>Defendants. | Civil Action No. 2:15-cv-00968<br><br>Judge Mark R. Hornak |

## OPINION

**Mark R. Hornak, United States District Judge**

Defendants Borough of California and Richard Encapera have moved to dismiss Plaintiff James Williamson's Second Amended Complaint.[1] The Court granted the first Motion to Dismiss filed by these Defendants, with prejudice as to some claims and without prejudice as to others. *See* ECF No. 40. This subset of parties has engaged in a second round of briefing on the Motion, ECF Nos. 45, 51, and the matter is ripe for disposition.

## I. BACKGROUND

The genesis of this case is a physical altercation that occurred on or about October 30, 2014. One man was severely beaten by several others, which led to Plaintiff James Williamson being arrested along with several other football players at California University of Pennsylvania. ECF No. 42, at 3 ¶¶10–11. Defendant Encapera filed an Affidavit of Probable Cause, ECF No. 42-1, with the local state magistrate and an arrest warrant issued, ECF No. 44-1, which was the basis for the arrests. Williamson was charged with aggravated assault, recklessly endangering

---

[1] The other Defendants—California University of Pennsylvania, Jim Plugh, and Michael Hampe—have answered. ECF No. 43. Plaintiff has also voluntarily dismissed Washington County (PA) District Attorney Eugene Vittone from the suit. ECF No. 49.

another person, harassment, and conspiracy. ECF No. 42, at 3 ¶11. He was jailed for nine days after his arrest. *Id.* ¶12.

According to Williamson, a video of the incident exists and it depicts four individuals striking the victim, but not including Williamson. *Id.* at 4 ¶¶17–19. Some University officials who had presumably seen the video identified the participants for Defendant Encapera and indicated that Williamson was not among those appearing in it. *Id.* ¶18. Apart from the video, however, Williamson's cell phone was recovered from the scene of the altercation. *Id.* at 5 ¶25. Two on-site witnesses—Shareese Asparagus and Anthony Martin—testified at a preliminary hearing after the arrest that "I [Asparagus] did not see James Williamson in the circle surrounding [the victim]" and "I [Martin] didn't see him physically do anything." *Id.* ¶¶27–28.

Williamson was suspended and dismissed both from his football team and from California University of Pennsylvania. *Id.* at 4 ¶22. He filed a University appeal which was heard before the University Conduct Board on July 16, 2015. *Id.* at 6 ¶35. There, according to Williamson, Michael Hampe (a University police officer) and Jim Pflugh (Associate Dean of Student Conduct) falsely testified and provided improper and false allegations regarding Williamson's involvement in the incident. *Id.* ¶¶36–37. The University Conduct Board upheld Williamson's punishment.[2] *Id.* at 7 ¶41.

Out of these events, Williamson brings several causes of action. For the purposes of resolving this Motion, the operative ones are: Count I False Arrest and Imprisonment against Encapera; Count III Malicious Prosecution against Encapera; Count IV Municipal Liability for Failure to Train, Supervise, and Discipline against the Borough of California. *See id.* at 7–11.

---

[2] By the time of the appeal hearing before the University Conduct Board, the criminal charges against Williamson had been dismissed. ECF No. 42, at 6 ¶38; *see also* ECF No. 42-2 (Court of Common Pleas of Washington County Order dated May 11, 2015).

2

## II. STANDARD OF REVIEW

A motion to dismiss will be granted if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In assessing the sufficiency of a complaint, a court must accept well-pled facts as true and view them in the light most favorable to the plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). The Court must also, however, disregard any legal conclusions. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Then, Court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211.

Importantly, complaints need to "show" that the plaintiff is entitled to relief. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Blanket assertions that a party is entitled to relief will not do, rather, a complaint must present a set of facts consistent with the allegations it makes and those facts must be suggestive of the proscribed conduct. *Id.* at 231–32 (citing *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 563 (2007)).

## III. ANALYSIS

The Court will first discuss the false arrest and false imprisonment claims, then the malicious prosecution claims against Richard Encapera. Then the Court will analyze the municipal liability claim against the Borough of California.

### A. False Arrest & False Imprisonment

Williamson alleges that he was falsely arrested and that Chief Encapera lacked an arrest warrant authorizing the arrest. ECF No. 42, at 4 ¶15. To state a claim for false arrest or false imprisonment, a plaintiff must show that he was arrested without probable cause. *Groman v. Twp. Of Manalapan*, 47 F.3d 628, 634-36 (3d Cir. 1995). "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a

detention pursuant to that arrest," *id.* at 636, because false arrest is a species of false imprisonment, *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "The validity of the arrest is not dependent on whether the suspect actually committed any crime, and 'the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant.'" *Johnson v. Campbell*, 332 F.3d 199, 211 (3d Cir. 2003) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)).

### i. The Arrest Warrant

To begin, the Plaintiff's allegation that no arrest warrant was issued is contrary to the record. *See* ECF Nos. 44-1, at 2 (the arrest warrant); 54-1 (same, again). Williamson called the existence of that warrant into question, and the Court ordered the Defendants to demonstrate its existence, authenticity and legal import. ECF No. 53. They have done so. ECF No. 54.

Williamson challenged the existence of the warrant via an "Interoffice Memorandum and Affidavit of Dana L. Turk, Esquire," ECF No. 51-2, that details the supposed wild goose chase Plaintiff's counsel embarked upon to find the warrant. According to that document, counsel's efforts were fruitless. *Id.*

Notably absent from the affidavit is any suggestion that Plaintiff's counsel contacted the California Borough Police Department, or anyone associated with it. Such action would have revealed the existence of the warrant, which is now filed on the docket and part of the record in this case. ECF No. 54-1, at 4. The California Defendants filed the warrant along with affidavits of Magistrate District Judge Joshua P. Kanalis (who issued the warrant) and Nicole Hernberger (a Washington County Court employee) that demonstrate the existence and authenticity of the warrant. ECF Nos. 54-2, 54-3. The California Defendants also filed Washington County Court documents that show the presence of the warrant on the secure official criminal docket and the

4

time stamp of the warrant: October 30, 2014 at 3:59:46 p.m. ECF No. 54-1, at 4. Thereafter, the Plaintiff has not adduced anything on the record to call that official state court docket information into question. Thus, the Court concludes that the admissible official record evidence admits of one conclusion – an arrest warrant issued prior to the Plaintiff's arrest.

### ii. Probable Cause

The existence of a warrant is strong evidence that Chief Encapera had probable cause to arrest Mr. Williamson. "Probable cause requires more than mere suspicion. However, it does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Reedy v. Evanson*, 615 F.3d 197, 211 (3d Cir. 2010) (internal citations and quotations omitted).

> Probable cause exists if there is a fair probability that the person committed the crime at issue. Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.

*Wilson v. Russo*, 212 F.3d 781, 789–90 (3d Cir. 2000) (internal citations and quotations omitted).[3]

Here, the California Defendants argue that the existence of the warrant, the fact that the charges were held over for trial after a full-blown preliminary hearing before the same Magistrate who issued the arrest warrant, and the facts known by Chief Encapera when he requested the warrant support a finding of probable cause. And of course with probable cause, Williamson's claim for false arrest/false imprisonment would fail as a matter of law. Williamson counters by arguing first that there was never a warrant. ECF No. 51, at 8. Williamson further

---

[3] A District Court may conclude "that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding [by a jury]." *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997).

argues that even if there was a warrant (and the official state court records reveal that there was, as described above), "Plaintiff is still not in possession of any evidence which would pose as probable cause for [its] issuance" and that the arrest warrant itself violated Williamson's due process rights because Chief Encapera had undisclosed exculpatory video evidence when he sought the warrant. *Id.*

The allegedly exculpatory video evidence is the crux of Williamson's claim here. He says that video of the altercation was known to the police but withheld from the state Magistrate when Chief Encapera applied for the arrest warrant. ECF No. 42, at 4 ¶¶ 18-20. And because that video was not presented to the Magistrate at that time, Williamson argues that probable cause was lacking to issue a warrant or to trigger an arrest. ECF No. 51, at 8.

That the charges against Williamson were held over for trial by a judicial officer after a preliminary hearing is "weighty evidence" that probable cause existed all along. *See Georgiadis v. Cumberland Cty.*, No. 1:11–cv–00964, 2015 WL 1445408, at *3 (M.D. Pa. Mar. 30, 2015); *McGowan v. Borough of Ambridge*, No. 2:06-cv-0858, 2008 WL 4200153, at *8 (W.D. Pa. Sept. 5, 2008). And at the preliminary hearing, *the allegedly exculpatory video was played* and the charges were *still* held over for trial by the same Magistrate who issued the arrest warrant. ECF No. 42-4, at 17 ("Whereupon, the video was played.").

Here is what the record shows was known to police *and* the state magistrate when the arrest warrant issued:[4] police were told that the assault was committed by a group of California University of Pennsylvania football players; witnesses told police that the individuals involved all got into a white Acura and left the scene; the white Acura was owned by D'Andre Dunkley (a California University of Pennsylvania football player); Dunkely participated in the assault; and Dunkley left in the Acura with "James." ECF No. 42-4. Those facts and circumstances (within

---

[4] This is *at least* what was known.

6

the police officers' knowledge, including Chief Encapera) were found by the state magistrate to be enough "to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *See Wilson*, 212 F.3d at 789–90.

When the allegation is that the police withheld necessary information from an issuing magistrate, the Court is to perform "reconstructive surgery" on the affidavit, plugging in the missing information that a reasonable magistrate would have objectively wanted to know, and then re-run the probable cause test.[5] *See McGriff v. Marks*, No. 2:12-cv-63, 2013 WL 1830948, at *5 (W.D. Pa. Apr. 30, 2013) (citing *Wilson*, 212 F.3d at 789). The thrust of Williamson's argument on this point is that the Magistrate would not have issued the arrest warrant (presumably based on the lack of probable cause) if he had just seen the allegedly exculpatory video. *See* ECF No. 51, at 8. But we also know what the same Magistrate would have done *had* he seen the video when the warrant was sought because he actually *saw the video* at the preliminary hearing and still held the charges against Williamson over for trial. ECF No. 42-4, at 17, 104. Here the *Wilson/Dempsey* "reconstructive surgery" was actually performed at the preliminary hearing via the showing of the video tape, and the Magistrate concluded that there was sufficient probable cause for the criminal proceedings to continue, and held Williamson over for further court proceeding. Thus, this Court is not put in a position to revisit that determination based upon an exercise of its imagination in terms of what the state Magistrate might have thought. Instead, we actually know exactly what he thought—that there was probable cause to hold the Plaintiff for Court.

---

[5] The Third Circuit recently held that when performing such "reconstructive surgery," District Courts *must* create a word-for-word reconstruction of the affidavit of probable cause. *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 470 (3d Cir. 2016). For the reasons noted above, the Court concludes that such reconstructive surgery would otherwise not be necessary here in the first instance, since we know, as of the preliminary hearing, exactly what this non-hypothetical state Magistrate actually (as opposed to theoretically) would have done—he found that there was probable cause. Nonetheless, as set out below, even when such *Wilson/Dempsey* reconstruction is done, this Magistrate in reality, and any reasonable Magistrate hypothetically, would have had before them more than sufficient evidence to support that probable cause finding.

7

At the preliminary hearing, the state Magistrate saw the video depicting the incident. He heard testimony from police officers and witnesses that the assault was committed by California University of Pennsylvania football players and that the football players left in a white Acura. He heard testimony that one of the participants admitted to being involved and admitted to leaving with "James" in the white Acura. He heard testimony that a man in a yellow sweatshirt was stomping the victim's face. He heard testimony that in the immediate aftermath of the assault, Williamson went to the victim's girlfriend's residence to recover his cell phone (which had been found at the scene of the fight) while wearing a yellow sweatshirt. The Magistrate also heard testimony that the scene was chaotic and multiple people were beating the victim, in addition to testimony that some witnesses did not see Williamson doing any punching or kicking. In short, he saw and heard all of the evidence Chief Encapera could be charged with having known and obligated to report when he sought the arrest warrant. Taken together, those facts are sufficient to raise a fair probability that Williamson committed one or more of the crimes charged.[6]

Beyond that, in conformity with *Dempsey*, the Defendant presented to the Court a fully-reconstructed "Affidavit of Probable Cause," ECF No. 45 at 13-14, incorporating *all* of the information arguably available to Chief Encrapera at the time he completed that Affidavit (as pled in the Plaintiff's Second Amended Complaint and as actually presented to the state Magistrate at the preliminary hearing), with the surgically-incorporated additional information and record references set forth in italics:

---

[6] Remember, the test for "probable cause" is not ultimate proof of guilt. *Reedy*, 615 F.3d at 211. That there was some evidence that would cut in favor of Plaintiff's non-involvement in the assault does not end the inquiry, since there was in this Court's estimation plenty of evidence to bind the Plaintiff over to court, not the least of which was the identification of a man in a yellow sweatshirt actively participating in the assault, the Plaintiff's wearing of just such a sweatshirt, his cellphone being found next to the victim right after the assault, and evidence that he was in the car that took those involved in the assault away from the scene. In the Court's estimation, as a matter of law, that is sufficient evidence to support the state Magistrate's conclusion that there was probable cause to believe that one or more of the charged offenses occurred and the Plaintiff committed such offenses, the *sine qua non* of probable cause.

8

AFFIDAVIT OF PROBABLE CAUSE

Based on the following facts and circumstances, and on information received from witnesses the charges of Aggravated Assault, Recklessly Endangering Another Person, Harassment, and Criminal Conspiracy are being filed against the accused in that on 10/30/2014 at approx 0209 hrs, the group participated in attacking Lewis Campbell and Shyreese Asparagus to the point that the group punched, pushed, kicked and stomped Campbell until he was unconscious and needed medical assistance.

The group is being defined as Jonathan Barlow, Corey Ford, Rodney Gillin, DAndre J. Dunkley, and James Williamson.

*"A videotape...clearly illustrates and depicts the scene and alleged assault."* (SAC, ¶ 17). *"Head Football Coach Mike Keller...[indicated]...that James Williamson did not appear on [the] video."* (SAC, ¶ 18). *"The video depicts four (4) individuals striking the alleged victim."* (SAC, ¶ 19). *However, the video depicts "at least six"... "individuals [ ] around Mr. Campbell at the time of the assault."* (N.T. Encapera, p. 15, Exhibit "D").

*"Witness, Shareese Asparagus...did not see James Williamson in the circle surrounding [Mr. Campbell]."* (SAC, ¶ 27). *However, Ms. Asparagus described the scene as "completely chaotic."* (N.T. Asparagus, p. 42, Exhibit "D"). *Ms. Asparagus "found a cell phone" "near Mr. Campbell" once the medics took him.* (N.T. Asparagus, p. 45). *"After the incident...Williamson showed up to [Anthony Martin's] front door and said it was his phone."* (N.T. Asparagus, p. 46).

*"Anthony Martin...didn't see [Mr. Williamson] physically do anything."* (SAC, ¶ 28). *However, Mr. Martin saw "a man in a yellow sweatshirt...stomping [Mr. Campbell's] face in."* (N.T. Martin, p. 81, Exhibit "D"). *Mr. Martin indicated that the man who came to his apartment to retrieve the cell phone (identified by Ms. Asparagus as Mr. Williamson) "was wearing a yellow sweatshirt."* (N.T. Martin, p. 84, Exhibit "D"). *Mr. Martin observed that "the five suspects" fled the scene in the same vehicle.* (N.T. Martin, p. 86, Exhibit "D").

A § 1983 false arrest claim arises only when there are material misrepresentations or omissions such that the reconstructed affidavit no longer supports a probable cause finding. *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016). Had all of this information actually been presented to the state Magistrate as part of the Affidavit of Probable Cause for the issuance of the

9

arrest warrant, this Court has no difficulty in concluding as a matter of law that the state Magistrate would have had before him more than sufficient evidence to reach the probable cause conclusion that he actually did when he had that evidence before him at the preliminary hearing.

Therefore, the Court concludes that based on all of the facts arguably known to police when they applied for the arrest warrant (and further elaborated at the preliminary hearing, including the video evidence advanced by the Plaintiff), as a matter of law, probable cause existed to arrest Mr. Williamson, and to then hold him over for state court proceedings. His claim for false arrest/false imprisonment will be dismissed with prejudice.[7]

### B. Malicious Prosecution

Williamson's next claim is for malicious prosecution against Chief Encapera. ECF No. 42, at 8. Malicious prosecution claims require plaintiffs to show that "(1) the defendant[] initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant[] acted maliciously or for a purpose other than brining the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (en banc).

Here, the first two elements are clearly satisfied. It is with the third that Williamson's case falters. As explained above, the Court concludes that probable cause existed to arrest Mr. Williamson. That alone is fatal to his claim for malicious prosecution, so Count III of the Second Amended Complaint will be dismissed with prejudice.

---

[7] The Court need not, and does not, separately reach Chief Encapera's qualified immunity argument, but at least one recent decision of our Court of Appeals appears to conclude that qualified immunity bars a false imprisonment claim where an arrest was based on probable cause. *Goodwin v. Conway*, No. 15-2720, 2016 WL 4728004, *4 (3d Cir. Sept. 12, 2016).

10

## C. Municipal Liability

Finally in this Motion, the Borough of California seeks dismissal of Count IV of the Second Amended Complaint, which is a municipal liability claim for failure to train, supervise, and discipline under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). To make out such a claim, Williamson must show that there was some official policy or custom that resulted in a constitutional violation. *See id.* at 691–94. A policy exists "when a 'decisionmaker possess[ing] final authority' . . . issues an official proclamation, policy or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom exists when "practices of state officials [are] so permanent and well settled as to virtually constitute law." *Id.* Plaintiffs must "identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). Under a failure to train theory, plaintiffs must show "both contemporaneous knowledge of the offending incident or knowledge of a prior patter of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. De Simone*, 159 F.3d 120, 126–27 (3d Cir. 1998).

The Third Circuit adds an additional wrinkle to municipal liability: it is possible to hold a municipality liable even where there is no individual liability on the part of a specific officer. *Fagan v. City of Vineland*, 22 F.3d 1283, 1292 (3d Cir. 1994). "If it can be shown that the plaintiff suffered that injury, which amounts to deprivation of life or liberty, because [an individual official] was following a city policy reflecting the city policymakers' deliberate indifference to constitutional rights, then the City is directly liable under section 1983 for causing a violation of the plaintiff's Fourteenth Amendment rights." *Id.* at 1292. The *Fagan* decision, however, has been strictly cabined in subsequent cases. *See Thomas v. Fayette Cty.*, __

F. Supp. 3d __, No. 2:14-cv-551, 2016 WL 3639887, at *14-16 (W.D. Pa. July 8, 2016) (collecting cases describing *Fagan*'s limited reach).

Williamson's *Monell* claim here is based on the fact that the Borough of California allegedly knew about allegations of similar misconduct (and hired someone to investigate them), but then did nothing about it. ECF No. 42, at 10 ¶ 61. That failure to take action in the face of such "similar allegations of misconduct," Williamson says, resulted in his constitutional injuries.

The Borough of California argues because there was no underlying constitutional violation against any individual police officer, the *Monell* claim must fail. ECF No. 45. That is not exactly right. *See Fagan*, 22 F.3d at 1292. The Borough also argues that the "similar allegations of misconduct" cited by Williamson are not so similar and anyway, Williamson pleads no facts to establish a policy or custom. ECF No. 45, at 21.

As discussed above, there was no constitutional violation perpetrated by any individual Borough actor because Chief Encapera had probable cause to arrest (and did so based on a judicially-issued warrant) Mr. Williamson. So to establish liability on the part of the Borough of California, Williamson would need to take the *Fagan* approach. That he cannot do. Williamson's claim boils down to: this has happened before, Borough decisionmakers knew about it, and didn't do anything so it happened again. But the "this" here is not a constitutional violation, rather it is an arrest and initiation of prosecution pursuant to a warrant issued with probable cause. So even if there were prior incidents where someone was arrested without probable cause, and even if the Borough knew about them, the arrest of Williamson could not have been made pursuant to "a city policy reflecting the city policymakers' deliberate indifferent to constitutional rights" because Williamson's constitutional rights were not violated. *See Fagan*, 22 F.3d at 1292. But besides that, looking at this claim through the Rule 12(b)(6) lens, accepting all well-pled

facts as true and drawing all inferences in Williamson's favor, he has not pointed to any specific policy of custom, much less pled facts that would support the existence of such a thing. He does not plead that the Borough had a policy of falsifying warrant applications or arresting people willy-nilly. And two instances of prior *alleged* misconduct do not make a custom "so permanent and well settled as to virtually constitute law." *See Andrews*, 895 F.2d at 1480. Therefore, Williamson's municipal liability claim will be dismissed with prejudice.

## IV. **CONCLUSION**

For the foregoing reasons, the Motion to Dismiss the Second Amended Complaint filed by the Borough of California and Richard Encapera will be granted. The only remaining Defendants in the case are California University of Pennsylvania and Jim Pflugh and the only remaining claims are at Counts V–VII of the Second Amended Complaint.

An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: November 17, 2016

cc: All counsel of record